**RECEIVED**
08/25/2025
KELLY L. STEPHENS, Clerk

No. 25-

# In The
# United States Court of Appeals
# for the Sixth Circuit

In re Toshiba America Energy Systems Corporation and Toshiba Corporation,
*Petitioners.*

From the United States District Court
for the Eastern District of Michigan, Southern Division, No. 4:22-cv-10847

## PETITION FOR WRIT OF MANDAMUS AND PROHIBITION

CHRISTOPHER M. CURRAN
ERIC GRANNON
J. FRANK HOGUE
DANIELLE TARIN
WHITE & CASE LLP
701 Thirteenth Street NW
Washington, D.C. 20005
(202) 626-3600
ccurran@whitecase.com
egrannon@whitecase.com
fhogue@whitecase.com
danielle.tarin@whitecase.com

*Counsel for Defendant-
Petitioners Toshiba America
Energy Systems Corporation
and Toshiba Corporation*

## CORPORATE DISCLOSURES

Pursuant to 6 Cir. R. 26.1, Petitioners Toshiba America Energy Systems Corporation and Toshiba Corporation make the following disclosures:

1.    Toshiba America Energy Corporation and Toshiba Company are not subsidiaries or affiliates of a publicly owned corporation.

2.    There is no publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome.

# TABLE OF CONTENTS

STATEMENT IN SUPPORT OF ORAL ARGUMENT ....................................1

JURISDICTIONAL STATEMENT ...................................................1

RELIEF SOUGHT...................................................................1

INTRODUCTION ...................................................................2

ISSUE PRESENTED ................................................................2

STATEMENT OF THE CASE ........................................................3

REASONS FOR GRANTING THE WRIT....................................14

I.    Petitioners Lack an Adequate Alternative Means for Relief and, Absent
      Mandamus, Will Be Prejudiced in a Way Not Correctable on Appeal.....15

II.   The District Court's Order Is Plainly Incorrect as a Matter of Law .........18

      A.    The District Court's Interpretation of the Jury Waiver Conflicts with
            the Waiver's Plain Language .......................................21

      B.    Even if TAES Were Not a Signatory to the Jury Waiver, TAES
            Would Still Be Able to Enforce It .................................26

      C.    The District Court's Interpretation of the Guaranty's Dispute-
            Resolution Provision Would Nullify the Jury Waiver .................29

CONCLUSION .....................................................................31

CERTIFICATE OF COMPLIANCE.................................................32

CERTIFICATE OF SERVICE.......................................................33

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aetna Ins. Co. v. Kennedy*,
   301 U.S. 389 (1937)............................................................8, 13, 19

*Am. Erectors, Inc. v. Art. Iron, Inc.*,
   No. 09-CV-13424, 2011 WL 13217105 (E.D. Mich. Jan. 27, 2011) ...............11

*Bauer v. Saginaw Cnty.*,
   641 F. App'x 510 (6th Cir. 2016)........................................22, 25, 26

*Boyd v. U.S. Bank Nat. Ass'n*,
   No. 06-2115, 2007 WL 2822518 (D. Kan. Sept. 26, 2007) .............................23

*Cheney v. United States Dist. Court*,
   542 U.S. 367 (2004).................................................................14

*Chesher v. Allen*,
   122 F. App'x 184 (6th Cir. 2005).............................................14

*Cohen v. Beneficial Indus. Loan Corp.*,
   337 U.S. 541 (1949).................................................................15

*Ex parte AIG Baker Orange Beach Wharf, L.L.C.*,
   49 So. 3d 1198 (Ala. 2010) ..................................................18

*Forge v. Smith*,
   458 Mich. 198 (Mich. 1998) ..............................................25, 29

*Hergenreder v. Bickford Senior Living Grp., LLC*,
   656 F. 3d 411 (6th Cir. 2011)..............................................20

*In re Am. Med. Sys., Inc.*,
   75 F.3d 1069 (6th Cir. 1996)...............................................17

*In re Bendectin Prods. Liab. Litig.*,
   749 F.2d 300 (6th Cir. 1984)...............................................15

*In re Lott*,
   424 F.3d 446 (6th Cir. 2005)...............................................14

*In re Nat'l Prescription Opiate Litig.*,
956 F.3d 838 (6th Cir. 2020) ...............................................................14

*In re Perrigo Co.*,
128 F.3d 430 (6th Cir. 1997) ...............................................................14

*In re United States*,
32 F.4th 584 (6th Cir. 2022) ................................................................15

*In re University of Michigan*,
936 F.3d 460 (6th Cir. 2019) ...........................................................14, 15

*John B. v. Goetz*,
531 F.3d 448 (6th Cir. 2008) ...........................................................14, 15

*K.M.C. Co. v. Irving Tr. Co.*,
757 F.2d 752 (6th Cir. 1985) ......................................................8, 9, 19, 20

*Klapp v. United Ins. Group Agency, Inc.*,
468 Mich. 459 (2003) .........................................................................29

*Marbury v. Madison*,
5 U.S. (1 Cranch) 137 (1803) ..............................................................15

*Nat'l Union Elec. Corp. v. Wilson*,
434 F.2d 986 (6th Cir. 1970) ...........................................................16, 17

*PNC Bank Nat'l Ass'n v. Land Contracts Unlimited, Inc.*,
No. 15-10112, 2015 WL 5877817 (E.D. Mich. Oct. 8, 2015)...................20, 23

*Quinn Const., Inc. v. Skanska USA Bldg., Inc.*,
No. 07-406, 2010 WL 4909587 (E.D. Pa. Nov. 30, 2010)...................10, 27, 28

*Static Control Components, Inc. v. Lexmark Int'l Inc.*,
697 F.3d 387 (6th Cir. 2012) ...............................................................17

*Thomas v. Westport Homes, Inc.*,
No. 2:18-CV-1019, 2020 WL 1275237 (S.D. Ohio Mar. 17, 2020).................28

*Thompson v. Parkes*,
963 F.2d 885 (6th Cir. 1992) .........................................................13, 16, 17

*Wilkie v. Auto-Owners Ins.*,
   469 Mich. 41 (2003) ..........................................................................29

## STATUTES AND RULES

28 U.S.C. § 1291..................................................................................15

28 U.S.C. § 1292(b) ......................................................................passim

5 Moore's Federal Practice ¶ 38.46 (2d ed. 1984) ...............................19

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Petitioners request oral argument under 6 Cir. R. 34(a).  Oral argument likely will prove helpful to the Court because this Petition involves multiple provisions in lengthy contractual documents and important legal issues related to jury-trial waivers.

## JURISDICTIONAL STATEMENT

The district court has subject-matter jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332.  Compl., ¶¶ 9-14, RE 1, PageID # 4-5.  This Court has appellate jurisdiction over any final decision by the district court pursuant to 28 U.S.C. § 1291.  This Court has jurisdiction to issue all writs necessary and appropriate in aid of that jurisdiction pursuant to 28 U.S.C. § 1651(a).

## RELIEF SOUGHT

Given a contractual jury-trial waiver, this Petition seeks a writ of mandamus directing the district court to try this action to the court and prohibiting the district court from trying the action to a jury.

## INTRODUCTION

The U.S. District Court for the Eastern District of Michigan, Southern Division (Flint), intends to conduct a jury trial in this action beginning on October 30, 2025.  On that day, scores of citizens from four counties surrounding Flint, Michigan will assemble and participate in *voir dire* to determine which of them will participate in a trial, conservatively estimated to last four to six weeks, to adjudicate the contractual rights of corporate parties related to a fifteen-year, over $500-million overhaul of a huge hydroelectric power plant in Ludington, Michigan.  But this is a jury trial that should never happen: the corporate parties involved all contractually *waived* their right to trial by jury.  Nonetheless, despite the plain language of that contractual waiver, the district court, applying an antiquated judicial skepticism of such contractual waivers, has determined to proceed with trial by jury.  A writ of mandamus is required to enforce that contractual jury-trial waiver and to prevent a jury trial that tramples on contract rights and unnecessarily imposes extraordinary burdens on everyday citizens.

## ISSUE PRESENTED

Whether Petitioners are entitled to a writ of mandamus directing the district court to try the case to the court, rather than to a jury, because Respondents knowingly and voluntarily waived their right to a jury trial by contract.

## STATEMENT OF THE CASE

This Petition arises from a breach-of-contract action in which two Michigan utilities have asserted some $653 million in claims against (i) a contractor they engaged to overhaul certain parts of their hydroelectric power plan and (ii) the ultimate corporate parent of the contractor.

## I.    Background

Plaintiffs-Respondents in this action are two electric utilities that, since 1973, have jointly owned and operated the Ludington Pumped Storage Plant, a hydroelectric power plant located in Ludington, Michigan.  Compl., ¶¶ 2, 21-22, RE 1, PageID # 1-2, 7.  In January 2011, the utilities and Toshiba International Corporation ("TIC"), an indirect subsidiary of Toshiba Corporation ("Toshiba"), entered into the Ludington Pumped Storage Plant Engineering, Procurement, and Construction Contract for Units 1 through 6 Turbine Generator Overhaul ("Overhaul Contract").  RE 1-1 (excerpts of Overhaul Contract as attached to Complaint).  In 2015, TIC assigned its rights and obligations under the Overhaul Contract to Toshiba America Energy Systems Corporation ("TAES"), another indirect subsidiary of Toshiba.  TAES and Toshiba are Defendant-Petitioners here.

## II.    Relevant Contractual Provisions

General Condition 26 (Parent Guaranty) of the Overhaul Contract expressly required "the Contractor" (*i.e.*, originally TIC and now TAES) to deliver to "the

Owner" (*i.e.*, the utilities) a Parent Guaranty executed by "Toshiba Corporation" as "Guarantor." *See* Overhaul Contract, Art. GC26, RE 1-1, PageID # 88. The Overhaul Contract provided the required form of the Parent Guaranty as Exhibit L to the Overhaul Contract, *id.* PageID # 100-03, and required TIC to deliver the executed Parent Guaranty from Toshiba in that form of Exhibit L within 60 days after execution of the Overhaul Contract, *id.* PageID # 88.

The utilities and TIC executed the Overhaul Contract on January 31, 2011. *See* Overhaul Contract, ¶ 9, RE 1-1, PageID # 64.

The Parent Guaranty was duly executed on behalf of Toshiba Corporation as of March 24, 2011 (*i.e.*, within the requisite 60 days of the execution of the Overhaul Contract). Parent Guaranty, RE 1-3, PageID # 141-74. The Parent Guaranty takes the precise form of Exhibit L to the Overhaul Contract and bears the vestige "Exhibit L" at its top. *See* Parent Guaranty, RE 1-3, PageID # 171.

The Parent Guaranty is also expressly "made a part of this [Overhaul] Contract" and included among the Overhaul Contract's defined term "Contract Documents." *See* Overhaul Contract, § 17, pp. 8-9 of 10 (Ex. 1 hereto). The Overhaul Contract provides: "All of the Contract Documents shall be considered complementary and what is required by one shall be binding as if required by all." Overhaul Contract, ¶ 6, RE 1-1, PageID # 64.

The Recitals of the Parent Guaranty state that the Owner and TIC "intend to enter into" the Overhaul Contract; that the Owner "desires the Guarantor to assure that TIC will perform all of its obligations pursuant to" the Overhaul Contract; that Article GC26 of the Overhaul Contract "requires TIC to obtain and provide a parent company guarantee of TIC's performance"; and that Toshiba Corporation "is willing to enter into this Guaranty to satisfy the conditions of the [Overhaul] Contract, and understands that its entry into this Guaranty is a material inducement for the Owner to execute the [Overhaul] Contract."  Parent Guaranty, RE 1-3, PageID # 171.

The ensuing paragraphs of the Parent Guaranty set forth the scope and the terms and conditions of Toshiba's guarantee of TIC's performance of the Overhaul Contract.  Parent Guaranty, RE 1-3, PageID #171-74.  Among those paragraphs are provisions adopting defined terms from the Overhaul Contract (¶ 1), guaranteeing the performance of TIC under the Overhaul Contract, including by performing in TIC's stead if TIC fails to perform in any respect (¶ 2), extending the duration of the Guaranty until all of the obligations of TIC under the Overhaul Contract are fully discharged (¶ 5), and addressing disputes arising under the Overhaul Contract and the Guaranty (¶ 7), among other provisions.  *Id.*

In connection with the assignment of the Overhaul Contract by TIC to TAES, Toshiba confirmed that the Parent Guaranty "shall remain fully in force and effect

following the foregoing Assignment." Assignment, RE 1-2, PageID #169. Both utilities agreed. *Id.*

Paragraph 7 of the Parent Guaranty includes, in all capital letters, a jury-trial waiver:

> THE GUARANTOR, AND THE OWNER BY ACCEPTANCE OF THE BENEFITS HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTY AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE OWNER ENTERING INTO THE CONTRACT.

Parent Guaranty, RE 1-3, PageID # 173. This waiver is expressly *not* limited to litigation and claims arising from the Guaranty. Instead, the waiver includes terms of much broader scope, including "ANY LITIGATION" that is "BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH" not only the Guaranty but also "ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH . . . ." *Id.* As the recitals to the Parent Guaranty confirm, the Overhaul Contract was obviously an "agreement contemplated to be executed in conjunction" with the Parent Guaranty.

## III.    Relevant Procedural History

On April 20, 2022, the utilities commenced this action against TAES for allegedly breaching the Overhaul Contract and against Toshiba for allegedly breaching the Parent Guaranty.  Compl., ¶¶ 174-204, RE 1, PageID # 47-55.  The claim against Toshiba alleges, among other things, that TAES failed to perform its obligations under the Overhaul Contract and Toshiba "breached the terms of the Parent Guaranty by failing to perform or take necessary steps to achieve performance in full of the Contract's terms and provisions."  Compl., ¶ 203, RE 1, PageID # 55.  The utilities currently seek $653 million in damages.  TAES and Toshiba deny liability; TAES asserts counterclaims.  Answer & Counterclaim, RE 17.

### A.    Motion to Strike Jury Demands

The utilities filed two Demands for Trial by Jury, the initial one (Demand for Jury Trial, RE 7) after their Complaint, and a supplemental one (Suppl. Demand for Jury Trial, RE 22) after TAES's counterclaims.  In substantially identical language, both demand a jury trial "on all issues triable by jury," without specifying what those issues might be.  RE 7; RE 22.  In a Joint Discovery Plan Under Rule 26(f) filed on October 20, 2022, TAES and Toshiba maintained that a jury-trial waiver in the Parent Guaranty "is valid and enforceable as to all [the utilities'] claims against both TAES and Toshiba"; the utilities "disagree[d] with [Petitioners'] position and

suggest[ed] briefing this issue at an appropriate time prior to trial."  Joint Discovery Plan, n.1, RE 29, PageID # 611.

On September 19, 2024 (*i.e.*, over a year before the now-scheduled trial date), TAES and Toshiba moved the district court to strike the utilities' jury demands under Rule 39(a)(2) of the Federal Rules of Civil Procedure.  Mot., RE 158, PageID # 4126.  After full briefing, the district court heard oral argument several months later, on May 7, 2025.  A week later, on May 14, 2025, the district court issued an Opinion and Order Denying Defendants' Motion to Strike Jury Demand (Mot., RE 158).  Op., RE 242, PageID # 26759.

The district court held that the jury-trial waiver did not apply to the utilities' claims against TAES.  The district court began its analysis by emphasizing that the right to trial by jury, even in a civil action, is a constitutional right.  The district court quoted the *Erie*-era case of *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389 (1937), for the proposition that "as the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver."  *Id.* at 393.  The district court added that the right may only be waived "if done knowingly, voluntarily and intentionally," quoting *K.M.C. Co. v. Irving Tr. Co.*, 757 F.2d 752, 755-56 (6th Cir. 1985).  The district court did not acknowledge this Court's corollary in *K.M.C.* that "in the context of an express contractual waiver the objecting party should have the burden of demonstrating that its consent to the provisions was not knowing and voluntary."

8

*Id.* at 758.  Nor did the district court recognize that the jury-trial waiver stated that the utilities were "KNOWINGLY, VOLUNTARILY AND INTENTIONALLY" waiving their right to a jury trial, using the precise terms from *K.M.C.*

The district court next asserted that "TAES is not a party to the Guaranty, which was executed by Toshiba," questioning whether such a non-signatory may invoke a contractual right.  Op., RE 242, PageID # 26763-64.  But the district court acknowledged that TAES (like its predecessor TIC) was a party to the Overhaul Contract and that the Overhaul Contract required and specified the form of the Parent Guaranty.  Op., RE 242, PageID # 26760-61.  The district court also acknowledged the broad language of the jury-trial waiver.  Op., RE 242, PageID # 26762.

The district court concluded that TAES's status as a third-party beneficiary of the jury-trial waiver was "preclude[d]" by the following provision in the Parent Guaranty:  "No person other than the Owner, or such permitted assignees as described above, is intended as a beneficiary of this Guaranty nor shall any person have any rights hereunder."  Op., RE 242, PageID # 26764 (quoting ¶ 6, RE 1-3). The district court did not appear to consider that the provision merely limits those who may enforce the Parent Guaranty *against* Toshiba:  *i.e.*, the Owner and its assignees, and that the provision does not limit the rights of Toshiba or TAES at all. Indeed, the district court did not appear to consider that under its reading of the

9

provision, Toshiba itself would be "preclude[d]" from enforcing the jury-trial waiver or any other rights expressly accorded to Toshiba in the Parent Guaranty.

The district court also found an alternative-dispute-resolution provision of the Overhaul Contract as being in tension with the jury-trial waiver, because the provision states that, upon the failure of the specified ADR procedures, "'either party may avail itself of *any process or means legally available to it* to resolve the dispute.'" Op., RE 242, PageID # 26765 (quoting Overhaul Contract, ¶ GC9, RE 1-1, at PageID # 74 (emphasis added by district court)). The district court did not appear to consider that the provision says nothing about whether a jury trial is among the process or means legally available to the parties to the Overhaul Contract.

The district court also brushed aside what it conceded was "broad" language in the jury waiver, concluding that such broad language was insufficient to vest TAES with standing to enforce the waiver. Op., RE 242, PageID # 26765-66. But the district court did not appear to consider that the authority it found "persuasive" on this point—*Quinn Const., Inc. v. Skanska USA Bldg., Inc.*, 2010 WL 4909587, at *5-6 (E.D. Pa. Nov. 30, 2010)—dealt with "a stranger" to the jury waiver who was relying on the waiver's broad language "standing alone"; *Quinn* expressly distinguished its holding from other cases that "involved additional factors that are not present here," including corporate relationships. *Id.* at *5-6. Nor did the district court appear to consider that TAES is hardly "a stranger" to the jury-trial waiver

10

here and is hardly relying upon the waiver's broad language "standing alone"; indeed, TAES's predecessor TIC negotiated the waiver, is a signatory to the Overhaul Contract that includes the Parent Guaranty as its Exhibit L, is expressly identified throughout the Parent Guaranty, and is the party whose obligations are being guaranteed by its corporate parent in the Parent Guaranty.

Nor did the district court appear to consider that Toshiba itself had standing to invoke the jury-trial waiver as to claims against TAES if any findings against TAES were to be considered as binding against Toshiba.  Parent Guaranty, RE 1-3, PageID # 172.

Lastly, the district court declined to give effect to provisions in the Overhaul Contract expressly incorporating the Parent Guaranty into the Overhaul Contract, relying on cases declining to enforce jury waivers "based solely on boilerplate incorporation language."  Op., RE 242, PageID # 26766-68 (quoting *Am. Erectors, Inc. v. Art. Iron, Inc.*, 2011 WL 13217105, at *4 (E.D. Mich. Jan. 27, 2011, a case in which, among other things, the jury waiver was inconspicuously "buried" in contractual documents)).  The district court did not appear to consider that enforcement of the jury waiver as to the claims against TAES is anything but based on "boilerplate incorporation language."  Not only is the incorporation language here bespoke and specific, but application of the jury waiver to the claims against TAES is supported by several factors, including that the Parent Guaranty involved a related

11

party (*i.e.*, TAES's parent Toshiba) and was attached to and expressly required by and incorporated into the Overhaul Contract (with each document cross-referencing the other), and the jury-trial waiver was conspicuously presented in all capital letters.

In denying TAES and Toshiba's motion to strike the utilities' jury demands, the district court stated that "[t]he parties do not dispute that this [jury-waiver] provision applies to Plaintiffs' claims against Toshiba under the Guaranty," but the district court's ruling nonetheless appears to effectively impose the outcome of any jury trial upon Toshiba as well as upon TAES. The utilities argued to the district court that the outcome of a jury trial against TAES would be "conclusive and binding" on Toshiba, "leaving little to be tried separately against Toshiba Corporation," such as "the issue of attorneys' fees and litigation expenses." Opp., RE 163, PageID # 4244-45. The district court appears to have accepted this argument, as it quoted the provision upon which the utilities relied for this argument (Op., RE 242, PageID # 26762), and the district court "denied" the motion to strike without qualification (*id.* Op., RE 242, PageID # 26759, 26768).

## B.    Motion to Certify the May 14 Order for Interlocutory Appeal

On May 22, 2025, TAES and Toshiba moved the district court to certify the May 14 order for interlocutory appeal under 28 U.S.C. § 1292(b). Mot. for Interlocutory Appeal, RE 243, PageID # 26769. On August 6, 2025, the district

court denied that motion, finding that the requirements for Section 1292(b) certification had not been met.  Op., RE 253, PageID # 27087-27094.

Notably the district court did not even acknowledge a substantial ground for difference of opinion as to TAES and Toshiba's motion to strike the jury demands. Reprising its reliance upon the 1937 *Aetna* case, the district court described what it had done in denying the motion to strike:  "The court interpreted the parties' agreements in light of ordinary contract principles and the Supreme Court's direction to 'indulge every reasonable presumption against waiver.'  Op., RE 242 (citing *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937))."  Op., RE 253, PageID # 27091.  The district court added that a new trial would not be necessary even "[s]hould the Sixth Circuit ultimately disagree with the court's decision on the jury waiver issue" because the district court on remand could substitute itself as the factfinder.  Op., RE 253, PageID # 27093.  The district court did not address Sixth Circuit decisions cited by TAES and Toshiba condemning such a switch in factfinder as insufficient.  *See, e.g.*, *Thompson v. Parkes*, 963 F.2d 885, 889 (6th Cir. 1992).

The district court also cited the upcoming October trial date and the now-advanced state of the action as reasons for denying Section 1292(b) certification. Op., RE 253, PageID # 27093.  Of course, TAES and Toshiba had filed their motion to strike in September 2024, while discovery was still underway and long before any summary judgment motions or the setting of a trial date.

13

## REASONS FOR GRANTING THE WRIT

Under the All Writs Act, 28 U.S.C. § 1651(a), this Court has the power to issue a writ of mandamus to a district court to preserve this Court's appellate jurisdiction over final judgments from the district courts. *In re University of Michigan*, 936 F.3d 460, 466 (6th Cir. 2019). In assessing whether to issue a writ of mandamus, this Court balances several factors, including whether (1) "the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired," (2) "the petitioner will be damaged or prejudiced in a way not correctable on appeal," (3) "the district court's order is plainly incorrect as a matter of law," (4) "the district court's order 'manifests a persistent disregard of the federal rules,'" and (5) "the district court's order raises new and important problems[.]" *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 843 (6th Cir. 2020); *see Cheney v. United States Dist. Ct.*, 542 U.S. 367, 380 (2004) (listing mandamus factors).

This Court applies "a more flexible approach to mandamus than other circuits." *Chesher v. Allen*, 122 F. App'x 184, 187 (6th Cir. 2005); *accord In re Perrigo*, 128 F.3d 430, 435 (6th Cir. 1997). Under this Court's approach, not "every element" on the list of factors must "be met in order for mandamus to issue." *In re Lott*, 424 F.3d 446, 449 (6th Cir. 2005). "[S]ome factors will often be balanced in opposition to each other." *John B. v. Goetz*, 531 F.3d 448, 457 (6th Cir. 2008). "Rarely if ever will a case arise where all the guidelines point in the same direction

or even where each guideline is relevant or applicable." *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 304 (6th Cir. 1984) (quotation marks and citation omitted).

Here, the first three factors all weigh in favor of granting the writ, and none weighs against it. This case thus presents the type of extraordinary circumstance that warrants mandamus relief.

## I. Petitioners Lack an Adequate Alternative Means for Relief and, Absent Mandamus, Will Be Prejudiced in a Way Not Correctable on Appeal

"[A] mandamus lies, if there be no other adequate, specific, legal remedy." *In re Univ. of Mich.*, 936 F.3d 460, 466 (6th Cir. 2019) (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 152 (1803)). Here, TAES and Toshiba have no other adequate means of obtaining relief other than a writ of mandamus. Absent mandamus, they cannot file an interlocutory appeal because the district court's order is not immediately appealable under the final-judgment rule or the collateral-order doctrine. *See* 28 U.S.C. § 1291; *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). And the district court has already denied TAES and Toshiba's motion to certify an appeal under Section 1292(b). Op., RE 253, PageID # 12087-27094. That leaves Petitioners with only a direct appeal after final judgment as a remedy. But that remedy is inadequate at best because Petitioners would "be damaged or prejudiced in a way not correctable on appeal." *In re United States*, 32 F.4th 584, 590 (6th Cir. 2022); *see Goetz*, 531 F.3d at 457.

First and foremost, a jury trial would breach TAES and Toshiba's contractual right to not be subject to a jury trial. And, if this Court were to conclude on direct appeal that the jury trial was conducted erroneously, TAES and Toshiba would likely not have any way of being made whole for that breach of contract, given that the jury trial had been ordered by the district court. *See Nat'l Union Elec. Corp. v. Wilson*, 434 F.2d 986, 988 (6th Cir. 1970) (explaining in post-trial appeal that, had the defendants sought mandamus, they could have avoided an improperly conducted trial). Furthermore, if a jury trial were to go forward, but this Court were later to conclude that Petitioners were entitled to a bench trial, the entire jury trial would have been for naught, at massive cost to the parties and to the citizens unnecessarily serving on the jury; a new trial, this time to the court, would be necessary.

The district court, in denying Section 1292(b) certification, asserted that if its denial of the motion to strike were reversed on direct appeal, a new trial would *not* be necessary because "the court, [which] will have heard the evidence along with the jury, is capable of issuing findings of fact and conclusions of law on the jury trial record on remand." Op., RE 253, PageID # 27093. Not so. A new trial would be necessary because, as this Court has recognized, a party's trial strategy varies widely depending on whether the factfinder is the judge or the jury. *See Thompson v. Parkes*, 963 F.2d 885, 888 (6th Cir. 1992) ("Any good trial lawyer will testify that there are significant tactical differences in presenting and arguing a case to a jury as

opposed to a judge.") (internal quotation marks and citation omitted); *see Static Control Components, Inc. v. Lexmark Int'l Inc.*, 697 F.3d 387, 413 (6th Cir. 2012) (same). This Court has explained that "[t]o convert a trial from a jury trial to a bench trial (or vice-versa) in the middle of the proceedings is to interfere with counsel's presentation of their case and, quite possibly, to prejudice one side or the other." *Thompson*, 963 F.2d at 888. In part for that reason, this Court has rejected the notion that a case tried to a jury could later have the court substituted as factfinder: "The parties are entitled to know prior to trial whether the jury or the court will be the trier of fact." *Id.* at 889. Granting mandamus here would provide that certainty and eliminate the need for needlessly duplicative trials. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1088 (6th Cir. 1996) (granting mandamus because, in relevant part, "[t]he waste of judicial resources due to duplicative proceedings is plain and is not correctable on appeal").

Indeed, this Court has *encouraged* parties to seek mandamus to challenge a dubious ruling by a district court as to whether an action should be tried to the bench or to a jury. In *Nat'l Union Elec. Corp.*, 434 F.3d at 988, this Court reversed, post-trial, a district court's erroneous determination to hold a bench trial rather than a jury trial. In so reversing, this Court seemed to bemoan that the aggrieved defendants had not sought mandamus (or certification for an interlocutory appeal), as those avenues could have avoided an improperly conducted trial. *Id.* at 988 (stating "could

have filed an action in mandamus in this Court" and "they might have obtained the relief they are now seeking and thus they would have avoided the ten days' trial"). As there, mandamus is the only adequate means for obtaining relief here.

## II.   The District Court's Order Is Plainly Incorrect as a Matter of Law

This Court should also grant the petition because the district court's order is plainly incorrect as a matter of law. *See, e.g.*, *Ex parte AIG Baker Orange Beach Wharf*, 49 So. 3d 1198 (Ala. 2010) (granting mandamus and ordering the trial court to enforce the contractual jury-waiver provision after trial court incorrectly interpreted the provision as not applying to some clams). As shown above, the Overhaul Contract expressly required TIC (the "Contractor") to deliver to the utilities (the "Owner") a parent guaranty executed by Toshiba (the "Guarantor"). *See* Overhaul Contract, Art. GC26, RE 1-1, PageID # 88. The Parent Guaranty includes a jury-trial waiver that is capacious in scope:

> THE GUARANTOR, AND THE OWNER BY ACCEPTANCE OF THE BENEFITS HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTY AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE OWNER ENTERING INTO THE CONTRACT.

Parent Guaranty, RE 1-3, PageID # 173.

18

The district court's decision to deny TAES and Toshiba's motion to strike the utilities' jury demands is plainly infected with an unwarranted skepticism of jury waivers. From the beginning to the end of its analysis in the denial order (Op., RE 242, PageID # 26763, 26767), the district court misplaced reliance upon the Supreme Court's 1937 *Aetna* decision stating that "courts indulge every reasonable presumption against [jury-trial] waiver." 301 U.S. at 393. For good measure, in later denying Section 1292(b) certification, the district court acknowledged its heavy reliance on *Aetna*. Op., RE 253, PageID # 27091. But *Aetna* did not involve any contractual waiver *at all* and merely made the unremarkable holding that parties' motions for directed verdicts did not constitute a waiver of a right to a jury trial. *Aetna*, 301 U.S. at 393-94.

Furthermore, whatever relevance *Aetna* may ever have had for contractual jury waivers, that relevance surely was obsolete by the time this Court decided *K.M.C.* in 1985. 757 F. 2d 752. In that case, this Court held that contractual jury waivers enjoyed "a presumption in favor of validity in the interest of liberty of contract" (quoting 5 Moore's Federal Practice ¶ 38.46, at 38-400 (2d ed. 1984)) and that a party trying to avoid the contractual waiver "should have the burden of demonstrating that its consent to the provisions was not knowing and voluntary." 757 F. 2d at 758 (applying federal law in diversity case). As *K.M.C.* establishes, in the modern era, courts certainly do not view contractual jury waivers (or arbitration

19

clauses or forum-selection clauses) with suspicion.  In fact, in *PNC Bank Nat'l Ass'n v. Land Contracts Unlimited, Inc.*, for example, the district court, in faithful adherence to *K.M.C.*, applied jury-trial waivers in a mortgage and credit note to a claim brought under a related guaranty that did not include a waiver where the note, guaranty, and mortgage were "interconnected."  No. 15-10112, 2015 WL 5877817, at *4-7 (E.D. Mich. Oct. 8, 2015).

Instead of imposing the burden on the utilities to justify why they should escape the plain language of the jury-trial waiver as *K.M.C.* requires, the district court repeatedly invoked *Aetna* and grasped for reasons *not to enforce* the waiver as written.  This misguided approach was particularly egregious because all of the factors this Court considers in determining whether a jury waiver is "knowing and voluntary" are decisively met.  *See, e.g., Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F. 3d 411, 420-21 (6th Cir. 2011) (listing factors).  The utilities are sophisticated and well-counseled parties; they had ample time (in the negotiation of a voluminous contract) to consider whether to agree to the waiver; the language of the waiver is crystal clear and exceedingly broad; ample consideration supported the waiver; and the totality of circumstances emphatically supports a "knowing and voluntary waiver."  Indeed, the waiver appears in a guaranty provided for the benefit of the utilities and states that the waiver itself "IS A MATERIAL INDUCEMENT

20

FOR THE OWNER ENTERING INTO THE [OVERHAUL] CONTRACT," indicating that the waiver was something the utilities affirmatively wanted.

### A. The District Court's Interpretation of the Jury Waiver Conflicts with the Waiver's Plain Language

The district court's decision, infected by a misplaced reliance on *Aetna*, is plainly incorrect as a matter of law because it conflicts with the plain language of the waiver. Under its plain language, the waiver applies to all of the utilities' claims, including their claims against TAES. Nothing in the waiver limits its scope to litigation or claims arising from the Parent Guaranty. To the contrary, the waiver is broad, explicitly applying to "ANY LITIGATION" that is "BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH" not only the Parent Guaranty but also "ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH . . . ." Parent Guaranty, RE 1-3, PageID # 173. Because the claims against TAES arise under the Overhaul Contract (the primary agreement executed in conjunction with the Parent Guaranty), the waiver applies to those claims, and they must be tried to a judge, not a jury.

The district court determined that the waiver could not apply to claims against TAES because TAES did not sign the waiver. The court failed to appreciate that the utilities did not sign the waiver itself either. But both TAES and the utilities are in fact signatories to the waiver, and thus the waiver applies to them, because they signed the Overhaul Contract, which expressly incorporates the Parent Guaranty

21

containing the waiver. The Parent Guaranty is part and parcel of the Overhaul Contract, inextricably intertwined with it. *See Bauer v. Saginaw Cnty.*, 641 F. App'x 510, 517 (6th Cir. 2016) ("Under Michigan law, parties may incorporate terms or documents from other writings into a contract.").

The Overhaul Contract is unambiguous that the Parent Guaranty is a required element of the parties' transaction and its form is "a part of this Contract." Overhaul Contract, § 17 (Ex. 1 hereto), pp. 8-9 of 10. The Overhaul Contract expressly requires TAES to deliver to the utilities the Parent Guaranty. *See* Overhaul Contract, Art. GC26, RE 1-1, PageID # 88. The Overhaul Contract provided the required form of the Parent Guaranty as Exhibit L to the Overhaul Contract. It also required TAES to deliver the executed Parent Guaranty in that form (Exhibit L) within 60 days after executing the Overhaul Contract. The utilities and TAES executed the Overhaul Contract on January 31, 2011. *See* Overhaul Contract, ¶ 9, RE 1-1, PageID # 64. The Parent Guaranty was timely executed on behalf of Toshiba. Parent Guaranty, RE 1-3, PageID # 171-74. The Parent Guaranty takes the precise form of Exhibit L and is attached to the Overhaul Contract with the label "Exhibit L" at its top. *See* Parent Guaranty, RE 1-3, PageID # 171.

The Parent Guaranty is also "made a part of this Contract" and included among the Overhaul Contract's defined-term "Contract Documents." *See* Overhaul Contract, § 17 (Ex. 1 hereto), pp. 8-9 of 10. The Parent Guaranty's opening language

22

states that the Parent Guaranty is made "for the benefit of" the Owner, referring to the utilities collectively. *See* Parent Guaranty, RE 1-3, PageID # 171. The Recitals of the Parent Guaranty state that the Owner and TAES "intend to enter into" the Overhaul Contract; that the Owner "desires the Guarantor to assure that [TAES] will perform all of its obligations pursuant to" the Overhaul Contract; that Article GC26 of the Overhaul Contract "requires [TAES] to obtain and provide a parent company guarantee of [TAES]'s performance"; and that Toshiba "is willing to enter into this Guaranty to satisfy the conditions of the Contract, and understands that its entry into this Guaranty is a material inducement for the Owner to execute the Contract." *Id.* Because TAES and the utilities signed the Overhaul Contract, the entire Overhaul Contract, which includes the Parent Guaranty, applies to them.

Several courts have held that similar jury waivers in guaranty agreements apply to claims related to, but not arising directly from, the guaranties themselves. *See, e.g.*, *PNC Bank Nat'l Ass'n*, 2015 WL 5877817, at *4-7 (E.D. Mich. Oct. 8, 2015); *Wachovia Bank, Nat'l Ass'n v. Longcrier Homes, Inc.*, No. 09-0703, 2010 WL 320484, at *1 (S.D. Ala. Jan. 21, 2010) (striking jury demand for breach-of-contract claims under a loan document where a related guaranty included a jury-trial waiver for litigation brought "IN CONNECTION WITH THIS GUARANTY, THE LOAN DOCUMENTS, OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS GUARANTY"); *Boyd v. U.S. Bank*

23

*Nat. Ass'n*, No. 06-2115, 2007 WL 2822518, *19 (D. Kan. Sept. 26, 2007) (striking jury demand for discrimination claims under the Equal Credit Opportunity Act for litigation "IN ANY ACTION OR PROCEEDING RELATED TO THIS GUARANTY").

Finally, the district court determined that the Parent Guaranty could not have been a part of the Overhaul Contract because "the Guaranty and the Contract each have their own dispute resolution provisions." Op., RE 242, PageID # 26767. But those provisions confirm that the Parent Guaranty is part of the Overhaul Contract because the key dispute-resolution provisions related to the contractual relationship as a whole reside in the Parent Guaranty itself. The *only* forum-selection clause in the integrated set of defined "Contract Documents" was placed in Paragraph 7 of the Parent Guaranty. Parent Guaranty, RE 1-3, PageID # 173. Such placement makes sense, given that Toshiba, as the Parent, was ultimately responsible for performing the Overhaul Contract and would be expected to be a party to any litigation related to contractual performance.

Under the contrary interpretation adopted by the district court, the forum-selection clause specifying the Eastern District of Michigan would apply only to the Parent Guaranty, and the utilities and TAES could sue each other under the Overhaul Contract anywhere in the country, even in state court. It is inconceivable that the parties would have specified a forum only for a derivative action against Toshiba

24

while providing that the main dispute between TAES and the utilities for a contract worth over $500 million could be litigated *anywhere*.  But the district court did not address (much less reconcile) why the parties would have meant to be careful in selecting the forum only for a derivative litigation under the Parent Guaranty, while choosing to be careless about the forum for the principal litigation under the Overhaul Contract.

The district court is also incorrect that the dispute-resolution provisions in the Overhaul Contract and the Parent Guaranty "arguably conflict[]."  *See* Op., RE 242, PageID # 26767.  As an initial matter, the Overhaul Contract requires all the Contract Documents to "be considered complementary."  Overhaul Contract, § 1, Art. 6, RE 1-1, PageID # 64; *see Forge v. Smith*, 458 Mich. 198, 207 (Mich. 1998) ("Where one writing references another instrument for additional contract terms, the two writings should be read together.").  Under this Court's precedents, "if the reference is made for the purpose of making such writing a part of the contract, [it] is to be taken as part of it just as though its contents had been repeated in the contract." *Bauer v. Saginaw Cty.*, 641 F. App'x at 518 (internal quotation marks omitted).

When properly read with that requirement in mind, the relevant provisions are consistent with each other.  The Overhaul Contract permits either party to give the other party "written notice of any dispute not resolved in the normal course of business."  Overhaul Contract, ¶ GC9, RE 1-1, PageID # 74.  And "[i]f the dispute

has not been resolved within sixty (60) days after such written notice is given, either party may avail itself of any process or means legally available to it to resolve the dispute." *Id.* Together, this provision and the jury-trial waiver make clear that, after the parties complete the specified alternative dispute-resolution procedures under the Overhaul Contract, TAES and the utilities are free to pursue whatever process or means are legally available to them, subject to the jury-trial waiver. Because of the waiver, a jury trial is not a process or a means legally available to the parties. The district court's contrary interpretation conflicts with the plain language of the waiver and is therefore incorrect as a matter of law.

### B.     Even if TAES Were Not a Signatory to the Jury Waiver, TAES Would Still Be Able to Enforce It

Even if the district court were correct that TAES cannot be considered to have signed the waiver, TAES could still enforce it. Courts have long recognized exceptions to the general rule that a jury-waiver provision in a contract generally affects only the rights of the parties to the contract. *See* Op., RE 242, PageID # 26764 (citing cases). A non-signatory may seek to enforce a jury waiver "under ordinary contract and agency principles, such as a third-party beneficiary to the contract, a successor in interest to the contract, or an agent intended to benefit from the clause." *Id.* (internal quotation marks and citation omitted). TAES would qualify for these exceptions.

26

First, TAES has standing to enforce the waiver as a third-party beneficiary of the waiver because the waiver applies to any litigation in connection with the Overhaul Contract, which TAES signed. Parent Guaranty, RE 1-3, PageID # 172. The district court disagreed, observing that, according to the Guaranty, "'[n]o person other than the Owner, or such permitted assignees as described above, is intended as a beneficiary of this Guaranty nor shall any such person have any rights hereunder.'" Op., RE 242, PageID # 26764 (quoting Parent Guaranty, ¶ 6, RE 1-3). But under its ordinary and natural reading, that provision was meant to avoid a circumstance where a stranger to the Parent Guaranty (like TAES's subcontractors) could require Toshiba to perform or indemnify under the Guaranty, making clear that only the Owner (and its assignees) could do so. The provision cannot reasonably be read as categorically depriving everyone other than the Owner (and its assignees) any rights under the Parent Guaranty. That would preclude *even Toshiba* from exercising any of its rights under the Parent Guaranty (such as its rights under the waiver, the forum-selection clause, or the service-of-process clause)—an outcome that neither party could have intended.

The district court also determined that a broad jury-trial waiver "alone" would be insufficient to allow a non-signatory to enforce a waiver. Op., RE 242, PageID # 26766 (citing *Quinn Const., Inc. v. Skanska USA Bldg., Inc.*, No. 07-406, 2010 WL 4909587, at *5-6 (E.D. Pa. Nov. 30, 2010)). But, as explained above, TAES is a

signatory to the waiver. And, in any event, TAES and Toshiba rely upon much more than just the broad language of the waiver. *Cf. Quinn Const.*, 2010 WL 4909587, at *5-6 (declining to apply a jury-trial waiver based on its terms "standing alone" where the party seeking to invoke the waiver was "a stranger" to the contracts at issue). As explained above, they rely on TAES's close familiarity with the Parent Guaranty: TAES is a subsidiary of Toshiba, a signatory on the Overhaul Contract, and the party that negotiated the form of the Parent Guaranty with the utilities.

Second, TAES has standing to enforce the waiver as an agent of Toshiba because TAES is a subsidiary performing a contract, the performance for which Toshiba is ultimately responsible. And Toshiba has standing to invoke the waiver's full terms, including as to "ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH." The waiver entitles Toshiba to a bench trial as to any element of the claim against it, including the antecedent issue whether TAES has breached the contract. *See* Compl., ¶¶ 196-204, RE 1, PageID # 53-55 (asserting a claim against Toshiba based on TAES's alleged failure to perform and Toshiba's failure to indemnify or perform in Toshiba's stead).

Equitable estoppel would also apply to bar the utilities from repudiating the jury waiver. The district court observed that "'equitable estoppel applies when a signatory to the contract relies on the terms of the contract to assert his claims against the non-signatory.'" Op., RE 242, PageID # 26765 (quoting *Thomas v. Westport*

28

*Homes, Inc.*, 2020 WL 1275237, at *4 (S.D. Ohio Mar. 17, 2020)).  Contrary to the district court's conclusion, equitable estoppel would apply here because the utilities seek to invoke the Parent Guaranty while simultaneously seeking to avoid giving effect to the waiver's plain language extending its scope to "ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH." Parent Guaranty, RE 1-3, PageID # 173.  Under these circumstances, mandamus relief is warranted to ensure the waiver is enforced.

### C.    The District Court's Interpretation of the Guaranty's Dispute-Resolution Provision Would Nullify the Jury Waiver

As noted above, the Overhaul Contract requires all the Contract Documents to "be considered complementary."  Overhaul Contract § 1, Art. 6, RE 1-1, PageID # 64; *see Forge*, 458 Mich. at 207 ("Where one writing references another instrument for additional contract terms, the two writings should be read together.").  That requirement is consistent with the general rule that courts must construe contracts in a manner that harmonizes the entire instrument, *Wilkie v. Auto-Owners Ins.*, 469 Mich. 41 (2003), and "give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory," *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 468 (2003).

Here, the district court erred again in failing to harmonize the waiver with other dispute-resolution provisions.  *See* Op., RE 242, PageID # 26762.  The opening sentence of paragraph 7 of the Parent Guaranty provides:

29

> In the event there is any dispute under the Contract that relates to a sum being claimed under this Guaranty, which dispute is submitted to dispute resolution in accordance with the procedures specified in the Contract, the obligations under this Guaranty shall be suspended pending the outcome of such dispute resolution procedures and the Guarantor further agrees that *the results of such procedures shall be conclusive and binding on it for purposes of determining its obligation under this Guaranty*.

*Id.* (quoting Parent Guaranty, RE 1-3, ¶ 7, PageID # 172) (emphasis added). This provision cross-references the dispute-resolution procedures specified in the Overhaul Contract (GC9), which specifies a 60-day period of executive negotiation before resorting to any legal process. The provision in paragraph 7 of the Parent Guaranty simply confirms that any resolution from the executive negotiation binds Toshiba, such that its obligations under the Parent Guaranty remain identical to TAES's under the Overhaul Contract.

The utilities, however, argue that this provision in paragraph 7 of the Parent Guaranty means that issues resolved in a jury trial against TAES is "conclusive and binding" on Toshiba, thereby depriving Toshiba of a bench trial on any such issues. The utilities' argument is built on a house of cards, as GC9 does not refer to any jury trial and certainly does not "specify" that one will occur. Nonetheless, at the hearing on TAES and Toshiba's motion to strike the jury demands, the district court seemed to express support for this argument by the utilities and the district court conspicuously quoted the first sentence of paragraph 7 of the Parent Guaranty in its order. Op., RE 242, PageID # 26762. But that interpretation would nullify the jury-

30

waiver provision because it would deny Toshiba the bench trial that the jury-waiver guarantees.  Such an interpretation amounts to an abuse of discretion and should be prohibited.

## CONCLUSION

For all these reasons, this Court should grant the Petition and enforce the jury waiver according to its terms.


Respectfully submitted,

/s/ *Christopher M. Curran*
CHRISTOPHER M. CURRAN
ERIC GRANNON
J. FRANK HOGUE
DANIELLE TARIN
WHITE & CASE LLP
701 Thirteenth Street NW
Washington, D.C 20005
(202) 626-3600
ccurran@whitecase.com
egrannon@whitecase.com
fhogue@whitecase.com
danielle.tarin@whitecase.com

*Counsel for Defendant-Petitioners Toshiba America Energy Systems Corporation and Toshiba Corporation*


DATED: August 25, 2025

31

## CERTIFICATE OF COMPLIANCE

In accordance with Rule 32(g) of the Federal Rules of Appellate Procedure, I certify that this Petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1) because, excluding accompanying documents and the parts of the Petition excepted by Rule 32(f), it contains 7,352 words.  This Petition complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

*/s/ Christopher M. Curran*
Christopher M. Curran


DATED: August 25, 2025

## CERTIFICATE OF SERVICE

I certify that on August 25, 2025, I electronically filed this petition with the Clerk of the United States Court of Appeals for the Sixth Circuit.  I further certify that I served a copy of by email and U.S. Mail to the district court and counsel for the Respondents-Plaintiffs.

*/s/ Christopher M. Curran*
Christopher M. Curran

DATED: August 25, 2025

**ATTACHMENTS INDEX**

| Attachment | Docket No. | Document Description | Filing Date | Page ID Range |
|---|---|---|---|---|
| A | 1 | Complaint | April 20, 2022 | 1–57 |
| B | 1-1 | Exhibit A to Complaint: Consumers Energy Company and the Detroit Edison Company Ludington Pumped Storage Plant Engineering, Procurement, & Constriction Contract for Units 1 through 6 Turbine Generator Overhaul with Toshiba International Corporation | April 20, 2022 | 58–164 |
| C | 1-2 | Exhibit B to Complaint: Assignment | April 20, 2022 | 165–169 |
| D | 1-3 | Exhibit C to Complaint: Parent Guaranty | April 20, 2022 | 170–174 |
| E | 7 | Jury Demand | April 25, 2022 | 185–187 |
| F | 17 | Defendants Toshiba America Energy Systems Corporation and Toshiba Corporation's Answer and Affirmative Defenses to Plaintiffs' Complaint and Counterclaim Against Plaintiffs | June 24, 2022 | 364–418 |
| G | 22 | Supplemental Jury Demand | July 28, 2022 | 544–546 |
| H | 29 | Joint Discovery Plan Under Rule 26(f) | Oct. 20, 2022 | 607–614 |

| I | 158 | Toshiba America Energy Systems Corporation and Toshiba Corporation's Motion to Strike Plaintiffs' Jury Demands | Sept. 19, 2024 | 4126–4147 |
|---|---|---|---|---|
| J | 163 | Plaintiffs' Response in Opposition to Defendants' Motion to Strike Plaintiffs' Jury Demands | Oct. 3, 2024 | 4219–4247 |
| K | 242 | Opinion and Order Denying Defendants' Motion to Strike Jury Demands | May 14, 2025 | 26759– 26768 |
| L | 243 | Toshiba America Energy's Systems Corporation and Toshiba Corporation's Motion Under 28 U.S.C. § 1292(b) to Certify for Immediate Appeal this Court's May 14, 2025 Order Denying their Motion to Strike Jury Demands | May 22, 2025 | 26769– 26791 |
| M | 253 | Opinion and Order Denying Motion to Certify Interlocutory Appeal | Aug. 6, 2025 | 27087– 27094 |